UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LORI PRECOURT, individually and as administrator of the estate of Carolyn Black; and DIANA MORRISON, | ) ) ) ) ) | CIV. 10-mc-130 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| FAIRBANK RECONSTRUCTION CORPORATION d/b/a FAIRBANK FARMS, a foreign corporation; GREATER OMAHA PACKING COMPANY, INC., a foreign corporation; and SHAW'S SUPERMARKETS, INC., a foreign corporation, | ) ) ) ) ) ) ) ) ) ) ) | ORDER GRANTING NONPARTY BEEF PRODUCT, INC.'S MOTION TO QUASH SUBPOENAS |
| Defendants. | ) | |

Beef Product, Inc. (BPI), a nonparty to the above entitled action, moves to quash two subpoenas issued by Greater Omaha Packing Company (GOPAC) and for a protective order prohibiting GOPAC from seeking further discovery. GOPAC does not resist the motion. The motion is granted.

**BACKGROUND**

BPI manufactures boneless lean beef. BPI is based in Dakota Dunes, South Dakota, and has processing plants in South Sioux City, Nebraska; Waterloo, Iowa; Finney County, Kansas; and Amarillo, Texas.

In the fall of 2009, a strain of *E coli* bacteria broke out in New England from beef products. As a result of this outbreak, multiple individuals brought

separate actions against Fairbank and GOPAC, including the underlying action in this case *Lori Precourt v. Fairbank Reconstruction Corp. et. al.* (*Precourt*), pending in the District of New Hampshire. The action alleges that on October 1, 2009, Carolyn Black consumed ground beef and two days later become ill with symptoms consistent with *E coli*. Black was hospitalized and died on October 30, 2009. Lori Precourt, as administrator of Black's estate, claims that the ground beef containing the *E coli* bacteria was processed and distributed first by GOPAC and then by Fairbank.

Various state and federal agencies commenced investigations about the *E coli* outbreak. On October 31, 2009, the United States Department of Agriculture (USDA) Food Safety and Inspection Services announced that Fairbank would voluntarily recall over 500,000 pounds of ground beef produced at its Ashville facility between September 14 and September 16, 2009. The recalled beef was processed by Fairbank using raw beef trim manufactured by GOPAC. BPI also supplies product to Fairbank.

Besides the meat sold to Fairbank, GOPAC also sold product to Culver City Meat Company located in California. Culver processed the GOPAC meat on September 22, 2009. When the USDA tested the ground beef at Culver's facility, it found that it contained *E coli* bacteria and that *E coli* was a genetic match to the strain associated with the New England outbreak. After investigating GOPAC's operations, the USDA issued a Notice of Intended Enforcement and threatened to shut down GOPAC's facilities.

Before GOPAC issued subpoenas in this case, it twice served subpoenas on BPI in *Long v. Fairbank Farms et. al.*, a similar action pending in Maine (*Long*). BPI did not respond because GOPAC failed to comply with the procedural rules for serving subpoenas. On November 24, 2010, GOPAC reissued courtesy copies of subpoenas for documents and ordered BPI to produce documents at the Holiday Inn Express in Vermillion, South Dakota, on December 10, 2010. GOPAC also issued a subpoena for a Rule 30(b)(6) deposition for the same time and location. On November 30, 2010, BPI informed GOPAC that if it effected service of the subpoenas, BPI would object. On December 1, 2010, the two subpoenas were delivered to Rich Jochum, BPI's corporate administrator and registered agent.

BPI informed GOPAC, in writing, that it objected to the subpoenas on December 6, but offered to voluntarily produce certain documents if GOPAC would forgo further discovery from BPI. Among the documents BPI agreed to voluntarily produce were all sale invoices and certificates of laboratory analysis relating to the BPI products that could have potentially been part of any product processed by Fairbank on the dates involved in the recall. BPI also offered an affidavit stating that the company made no sales to Culver or its entities during the pertinent time period.

During a December 8 telephone conversation, BPI's counsel again offered to GOPAC's counsel that BPI would voluntarily disclose the above-mentioned documents, but GOPAC's counsel did not accept the offer. When asked what

specific documents it sought, GOPAC's counsel failed to identify any particular documents. Instead, GOPAC's counsel stated that it would serve new subpoenas on BPI. Because discovery closed in *Long* on December 20, GOPAC stated that it would serve new subpoenas in *Precourt*.

On December 14, 2010, GOPAC served two subpoenas in *Precourt* on BPI by leaving the subpoenas with Jochum's wife at his home. One subpoena commands BPI to produce certain requested documents at the Holiday Inn Express in Vermillion, South Dakota on December 29, 2010, (document subpoena). The other subpoena directs BPI to attend a deposition on the same date at the same location (deposition subpoena). *See* Docket 1-1 and 1-2.

On December 17, 2010, Fairbank served a document subpoena on BPI seeking limited documents. BPI fully complied with the subpoena and most of the documents produced to Fairbank would have been voluntarily produced to GOPAC if GOPAC had accepted BPI's offers. On December 22, 2010, BPI advised GOPAC in a written letter that its service of the December 14 subpoenas was ineffective. In this letter, BPI indicated that it had responded to Fairbank's subpoena and produced all documents related to BPI's sale, shipment, and laboratory analysis of product sent to Fairbank during the relevant time frame.

On December 28, 2010, BPI's counsel had a telephone conference with GOPAC's attorney. GOPAC's attorney acknowledged that he had not reviewed BPI's production in response to Fairbank's subpoena, but he believed it was

4

insufficient. GOPAC's counsel further indicated that court intervention would be necessary to resolve the dispute. BPI then filed this motion.

## DISCUSSION

### I. Service

BPI contends that service of both of the subpoenas was improper. "Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(l). Service of a subpoena under Rule 45 differs from service of a complaint under Rule 4:

> The use of the word "delivering" in subdivision (b)(1) of the rule [Rule 45] with reference to the person to be served has been construed literally. Under this construction, contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness.

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2454 (4th ed. 2010). While there is a minority rule that personal service is not required, the Eighth Circuit follows the majority, which requires personal service for a nonparty subpoena. "When a non-party is served, the method of service needs to be one that will ensure the subpoena is placed in the actual possession or control of the person to be served." *Firefighter's Inst. for Racial Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (citation omitted).

District courts have wide latitude in discovery matters and an order granting a motion to quash is reviewed under an abuse of discretion standard. *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361-62 (8th Cir. 2003). Courts routinely quash nonparty subpoenas that fail to meet the procedural rules. *See, e.g., Firefighters Inst.*, 220 F.3d at 903 (reasoning that because the nonparty subpoena did not comply with the procedures outlined in Rule 45, the district court's order to quash was appropriate).

GOPAC served the subpoenas on BPI by leaving them with Jochum's wife at Jochum's residence. Jochum's wife is not a registered agent of BPI. Consequently, GOPAC did not properly serve the subpoenas on BPI because GOPAC did not place the subpoenas in Jochum's actual possession. Accordingly, BPI's motion to quash is granted.

## II. Attorney's Fees

BPI seeks attorney's fees for its attorney's work in preparing this motion. If a court grants a motion to quash, it may grant attorney's fees:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court ***must*** enforce this duty and impose an appropriate sanction—which may include . . . reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(c)(1) (emphasis added). In the context of Rule 45(c)(1), courts have held that "a party should first seek documents from the opposing party before seeking those documents from non-parties . . ." *Coffeyville Res. Ref. &*

6

*Mktg., LLC v. Liberty,* No. 4:08MC00017, 2008 WL 4853620, at *2 (E.D. Ark. Nov. 6, 2008) (citations omitted).

BPI notified GOPAC in writing and in a telephone conversation that its subpoenas were procedurally defective. GOPAC refused to retract the subpoenas, which forced BPI to file this motion to quash.

Moreover, BPI fully complied with Fairbank's subpoena for documents. BPI also offered, on numerous occasions, to voluntarily produce all records associated with Fairbank, including sales receipts and laboratory analyses, and to produce an affidavit stating that BPI did not sell meat to Culver during the relevant time period. Most of the documents that BPI voluntarily offered to GOPAC were produced in response to Fairbank's subpoena. To the extent that GOPAC's subpoena seeks information already released under Fairbank's subpoena, GOPAC failed to take reasonable steps to minimize the burden to BPI.

GOPAC failed to retract the procedurally defective subpoenas after BPI informed GOPAC that the subpoenas violated Rule 45. GOPAC also refused to accept BPI's offer to voluntarily release certain documents or to review the documents released by BPI to Fairbank before serving its own subpoenas on BPI. Had GOPAC complied with any of BPI's suggestions, BPI would not have been forced to file this motion. Consequently, an award of reasonable attorney fees that BPI generated in preparing this motion is appropriate. Accordingly, it is

ORDERED that nonparty Beef Product, Inc.'s motion to quash (Docket 1) is granted. Because GOPAC's subpoenas were denied only on procedural grounds, BPI's motion for protective order is denied at this time. Counsel for Beef Product, Inc. is to prepare an affidavit detailing the fees it generated in preparing this motion to quash and file the affidavit with the court within 14 days. GOPAC may file any objections to the fees within 14 days.

Dated January 28, 2011.

                                  BY THE COURT:

                                  /s/ *Karen E. Schreier*
                                  KAREN E. SCHREIER
                                  CHIEF JUDGE