UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LORI PRECOURT, individually and as administrator of the estate of Carolyn Black; and DIANA MORRISON, | ) ) ) ) | CIV. 10-mc-130 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| FAIRBANK RECONSTRUCTION CORPORATION d/b/a FAIRBANK FARMS, a foreign corporation; GREATER OMAHA PACKING COMPANY, INC., a foreign corporation; and SHAW'S SUPERMARKETS, INC., a foreign corporation, | ) ) ) ) ) ) ) ) ) ) | ORDER |
| Defendants. | ) ) | |

On December 29, 2010, Beef Product, Inc. (BPI), a nonparty to the above entitled action, moved to quash two subpoenas issued by Greater Omaha Packing Company (GOPAC). The court granted the motion and imposed attorney fees for BPI as a sanction on GOPAC. GOPAC moves to reconsider the court's award of attorney fees to BPI and, alternatively, objects to BPI's requested attorney fees. BPI resists the motion. GOPAC's motion is denied in part and granted in part.

GOPAC served two new subpoenas on BPI, and BPI moves to quash these subpoenas. GOPAC resists the motion to quash. BPI's motion is denied in part and granted in part.

## BACKGROUND

The pertinent facts to this order are as follows:[1] BPI manufactures beef trim product known as lean fine textured beef (LFTB). BPI is based in Dakota Dunes, South Dakota, and has processing plants in South Sioux City, Nebraska; Waterloo, Iowa; Finney County, Kansas; and Amarillo, Texas.

In the fall of 2009, a strain of *E. coli* bacteria broke out in New England from beef products. As a result of this outbreak, multiple individuals brought separate actions against Fairbank and GOPAC, including the underlying action in this case *Lori Precourt v. Fairbank Reconstruction Corp. et. al.* (*Precourt*), pending in the District of New Hampshire. That action alleges that on October 1, 2009, Carolyn Black consumed ground beef from Shaw's Supermarket, Inc. and two days later become ill with symptoms consistent with *E. coli* poisoning. Black was hospitalized and subsequently died on October 30, 2009.

Various state and federal agencies commenced investigations regarding the *E. coli* outbreak. On October 31, 2009, the United States Department of

---

[1] The facts in this order differ from the facts in the court's order on BPI's first motion to quash (Docket 10) because GOPAC responded to BPI's second motion to quash and supplied the court with its version of the facts.

2

Agriculture's Food Safety and Inspection Services announced that Fairbank would voluntarily recall over 500,000 pounds of ground beef that had been produced at its Ashville facility between September 14 and September 16, 2009. Fairbank admitted that it was the source of the *E. coli* tainted meat sold by Shaw's. The recalled beef was processed by Fairbank using raw beef trim from other beef manufacturers. GOPAC and BPI supplied product to Fairbank and one of the central issues in *Precourt* is who is the source of the *E. coli* that was introduced into Fairbank's product. GOPAC intends to argue that another manufacturer, such as BPI, and not GOPAC, is the ultimate source of the *E. coli*.

Before GOPAC issued subpoenas in this case, it twice served subpoenas on BPI in *Long v. Fairbank Farms* (*Long*), a similar action pending in the District of Maine. BPI did not respond because GOPAC failed to comply with the procedural rules. On November 24, 2010, GOPAC reissued the subpoena for documents and commanded BPI to produce documents at the Holiday Inn Express in Vermillion, South Dakota, on December 10, 2010. GOPAC also issued a subpoena for a Rule 30(b)(6) deposition for the same time and location. On November 30, 2010, BPI informed GOPAC that if it effected service of the subpoenas, BPI would object. On December 1, 2010, the two subpoenas were delivered to the residence of Rich Jochum, BPI's corporate administrator and registered agent, and were served on his wife.

3

BPI informed GOPAC, in writing, that it objected to the subpoenas on December 6, 2010, but it offered to voluntarily produce certain documents if GOPAC would forgo further discovery from BPI. Among the documents BPI agreed to voluntarily produce were all sale invoices and certificates of laboratory analysis relating to the BPI products that could have potentially been part of any product involved in Fairbank's recall.

During a December 8, 2010, telephone conversation, BPI's counsel again offered to voluntarily disclose the above-mentioned documents to GOPAC's counsel. GOPAC's counsel refused the offer and stated that GOPAC would serve new subpoenas on BPI. Because discovery closed in *Long* on December 20, 2010, GOPAC stated that the new subpoenas would be served in *Precourt*.

On December 14, 2010, GOPAC served two subpoenas on BPI by leaving the subpoenas with Jochum's wife at his home. One subpoena commanded BPI to produce certain requested documents at the Holiday Inn Express in Vermillion, South Dakota, on December 29, 2010, (document subpoena). The other subpoena directed BPI to attend a deposition on the same date at the same location (deposition subpoena). *See* Dockets 1-1 and 1-2.

On December 17, 2010, Fairbank served a document subpoena on BPI seeking limited documents. BPI fully complied with the subpoena and most of the documents produced to Fairbank would have been voluntarily produced to

4

GOPAC if GOPAC had accepted BPI's offers on December 6 or 8. On December 22, 2010, BPI advised GOPAC in writing that its service of the December 14 subpoenas was ineffective. In this letter, BPI indicated that it had responded to Fairbank's subpoena and produced all documents related to BPI's sale, shipment, and laboratory analysis of product sent to Fairbank during the relevant time frame.

On December 28, 2010, BPI's counsel had a telephone conference call with GOPAC's counsel. GOPAC's attorney acknowledged that he had not reviewed BPI's production in response to Fairbank's subpoena, but he believed it was insufficient. GOPAC's attorney further indicated that court intervention would be necessary to resolve the dispute. Later that day, BPI filed its motion to quash, for a protective order, and for sanctions. GOPAC never responded to the motion. The court granted BPI's motion to quash, denied the motion for a protective order, and granted sanctions in the form of attorney fees to BPI on January 28, 2011. In that order, the court gave BPI's attorney 14 days to submit an affidavit detailing the fees incurred in preparing the motion to quash, and gave GOPAC 14 days after that order to object to the requested fees.

GOPAC served new subpoenas on BPI on January 6, 2011. The parties attempted to negotiate what documents would be produced under the new subpoenas and what topics the Rule 30(b)(6) deposition would cover. The

5

negotiations failed on January 21, 2011, and the parties filed the pending
motions.

## DISCUSSION

## I.   Motion to Quash

BPI moves under Rules 26(c) and 45(c)(3)(A) to quash GOPAC's second
set of subpoenas. The document subpoena orders that certain documents be
produced at the Holiday Inn Express in Vermillion, South Dakota, on
January 31, 2011. The deposition subpoena orders an appearance for a
deposition at the same location on the same date. BPI seeks numerous forms of
relief:

> BPI asks the Court to quash the Subpoena . . . BPI also asks the
> Court to quash the Rule 30(b)(6) deposition of BPI . . . .
> Additionally, BPI asks the Court to enter a protective order
> pursuant to Federal Rule of Civil Procedure 26(c) prohibiting
> GOPAC from seeking documents from BPI other than those BPI
> has produced or offered to produce; limiting any Rule 30(b)(6)
> deposition of BPI to matters related to the BPI product that was
> used by Fairbank Farms in the recalled product; and permitting
> BPI to designate documents and information as confidential or
> attorneys' eyes only, if appropriate.

Docket 6 at 2.

Discovery may be obtained "regarding any nonprivileged matter that is
relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). While
discovery is not a fishing expedition, the relevancy standard is broader for
discovery than for admissibility of evidence. *Hofer v. Mack Trucks, Inc.*, 981
F.2d 377, 380 (8th Cir. 1992) (citations omitted). "Some threshold showing of

6

relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* The party seeking discovery bears this burden. *See id.* " 'Even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.' " *Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990)).

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction." Fed. R. Civ. P. 45(c)(1). A court "must quash or modify a subpoena that . . . subjects a person to undue burden." *Id.* Some courts utilize a six-factor test for determining if an undue burden exists: " '(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the discovery request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.' " *Glenford Yellow Robe v. Allender*, No. 09-5040-JLV, 2010 WL 1780266, at *5 (D.S.D. Apr. 30, 2010) (quoting *Jade Trading, LLC v. United States*, 65 Fed. Cl. 188, 190 (Fed. Cl.

2005)). The party moving to quash the subpoena bears the burden to prove that the subpoena would create an undue burden. Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2459 (3d ed. 2008).

When a nonparty is subpoenaed, the court is particularly mindful of Rule 45's undue burden and expense cautions. Wright & Miller, at § 2459; *see also Alberts v. HCA Inc.*, 405 B.R. 498, 503 (D.D.C. 2009) (reasoning that a "blatant abuse of the subpoena power is a common thread running through decisions in which sanctions have been awarded under Rule 45(c)(1)," such as seeking information from a nonparty to use in a different court action). To protect a nonparty from undue burden or expense, the court can modify the subpoena's scope or shift the financial burden of retrieving the information to the requesting party. Wright & Miller, at § 2459. If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena. *See In re Cantrell*, No. 09-mc-0158-CV-W-GAF, 2009 WL 1066011, at *2 (W.D. Mo. Apr. 21, 2009) (quashing a nonparty document subpoena because a party in the action had the information). If the subpoena seeks the nonparty's confidential information, the court can find that the party serving the subpoena engaged in "overzealous discovery," quash the subpoena, and award costs to the nonparty. *Haworth Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978-79 (Fed. Cir. 1993).

### A. Document Subpoena

#### 1.      Government Inspection Records

In subpart A of the document subpoena, GOPAC seeks production by BPI of "all governmental inspection records relating in any way to any inspection of BPI by the United States Department of Agriculture and/or the Federal Food Safety Inspection Services (collectively the "FSIS") between January 1, 2009 and the present." Docket 8-1 at 7 (emphasis in original). GOPAC has defined "the present" as January 6, 2011, the date GOPAC proposed for the deposition. Docket 16 at 12.

The information sought by GOPAC is relevant. Throughout their briefs, GOPAC and BPI make substantial arguments as to why the other manufacturer is the source of the *E. coli* that was introduced into Fairbank's product. This is a factual issue to be decided by the *Precourt* court in New Hampshire, not by this court. Instead, the issue before this court is whether GOPAC's subpoenas served on nonparty BPI are proper under Rule 45. GOPAC intends to argue in *Precourt* that another manufacturer, such as BPI, and not GOPAC, was the *E. coli* source. Government inspection records are public documents and would tend to prove or disprove that BPI was the source of the *E. coli* bacteria. Thus, subpart A seeks relevant information.

BPI contends that the subject matter is too broad and that the time frame is not sufficiently limited. On BPI's subject matter concern, GOPAC

9

agreed to limit discovery to safety inspections of BPI's manufacturing or testing process at BPI's South Sioux City plant. Attorney David Nolan's Affidavit, Docket 18 at ¶ 3 ("In a telephone conversation with Mr. Shattuck, in January, 2011, I had indicated a willingness . . . to limit production to the South Sioux City facility of BPI."); Docket 16 at 12 (same).

On BPI's time limit concern, GOPAC contends that "[a]s shown by the February 2010 Notice of Intended Enforcement, government inspections months later may reveal systematic problems in a manufacturing process that were in place in August of 2009. GOPAC should be able to perform additional discovery to find out what additional investigations were completed by the government." Docket 16 at 11. While a two-year time frame for discovery of public records is a reasonable time limit, BPI may be burdened in gathering all the requested government records. To reduce the burden on BPI in producing all FSIS inspection records for BPI's South Sioux City plant from January 1, 2009, to January 6, 2011, GOPAC will pay BPI's reasonable expenses incurred in complying with subpart A. If the parties are unable to reach an agreement on the amount to be paid for reasonable expenses, GOPAC should file a motion seeking court resolution of this issue.

## 2.   Microbiological Testing Records

In subpart B, GOPAC seeks production of "all <u>microbiological testing records</u> relating in any way to any environmental, carcass, production and/or

product testing performed by BPI, on behalf of BPI, or otherwise performed at BPI, between January 1, 2009 and December 31, 2009." Docket 8-1 at 7.

GOPAC agreed to narrow the time frame from August 1 through September 30, 2009. BPI responded that it would produce all microbiological testing records from August 1, 2009, to September 16, 2009, which is the last date that Fairbank recalled its tainted product. The central issue in *Precourt* is which manufacturer supplied the tainted product to Fairbank and, thus, BPI's testing results are only relevant during the time period that it could have supplied product to Fairbank that could have been used to prepare the ground beef that was sold to Shaw's. Accordingly, subpart B is modified to the time period of August 1 to September 16, 2009.

### 3.    Subparts C–J

The remaining requests in the document subpoena, subparts C–J, as currently written, seek potentially voluminous records from BPI:

> [Subpart C seeks] all <u>pre-operational production and operational plans</u>, in effect between June 1, 2009 and September 30, 2009, relating in any way to the slaughter of cattle and production of beef products by BPI. . . . [Subpart D seeks] all <u>daily production and operational records</u>, between June 1, 2009 and September 30, 2009, relating in any way to the daily production of beef products by BPI. . . . [Subpart E seeks] all <u>procurement and distribution records</u> relating in any way to the beef products produced and distributed by BPI between June 1, 2009 and September 30, 2009 (unless otherwise indicated below). . . . [Subpart F seeks] all <u>operational audits</u>, including but not limited to any e-mails, correspondence, memos, reports, findings, conclusions and/or any other records which in any way relate to or concern any audit or inspection of your establishments (whether performed by you, any

11

governmental agency, or any third-party or customer) between January 1, 2009 and the present. . . . [Subpart G seeks] all customer complaint records, including but not limited to any emails, correspondence, memos, reports, findings, conclusions and/or any other records which in any way relate to or concern any alleged food-borne illness complaint BPI received from any party between January 1, 2009 and the present. . . . [Subpart H seeks] any and all Record Reviews for the calendar year 2009, including but not limited to any e-mails, correspondence, memos, reports, findings, conclusions and/or any other records which in any way relate to or concern any Record Reviews. . . . [Subpart I seeks] all organizational charts, or other diagrams or descriptions, of the management structure of your company and establishments. . . . [Subpart J seeks] all records of communication or activity between your company/establishments and any locations or representatives of Fairbank Farms, Inc., Fairbank Reconstruction Corp., AFA Foods, afa Foods or related entities relating to any provisions of the American Foodservice Corporation Domestic Beef Raw Materials Specifications ("Specifications[") including but not limited to: audits, Acceptable Quality Level inspections, determinations of exceeding any of the action levels as set forth in the Specifications; microbiological trend data; "intensive sampling" as provided for in Attachment No. 3 to the Domestic Beef Raw Materials Specifications, for the timeframe between January 1, 2009 and the present.

Docket 8-1 at 7-8.

With the exception of subpart I, BPI resists these requests for a myriad of reasons, including that the requests are vague, the information sought is irrelevant, unduly burdensome, and some of the information is proprietary trade secret information protected by Rule 26(c)(1)(G).

Some or all of BPI's objections may be valid reasons to prevent disclosure of the documents requested in subparts C–J, exclusive of subpart I. After the parties have completed discovery on subparts A and B concerning *E. coli* tests

12

and government inspection records, if GOPAC believes that it has good cause to request the additional information sought in subparts C–J, exclusive of subpart I, it may move for oral argument and the court will take up the remaining document requests at that time.

Regarding subpart I, BPI contends that it "has no documents responsive to this request as modified." Docket 7 at 24. GOPAC agrees that no other documents are required for subpart I: "BPI states that there are no documents responsive to this request. Based upon that statement, GOPAC is not requesting additional information on this topic provided that GOPAC can confirm this response under oath at the Rule 30(b)(6) deposition." Docket 16 at 16. Thus, BPI's motion to quash the document subpoena on subparts C–J is granted.

**B.   Deposition Subpoena**

GOPAC also served a deposition subpoena on BPI that includes, but is not limited to, twelve enumerated topics. BPI does not object to a deposition but rather to the scope of certain topics.

Topics 1-3 concern testing of product, incoming raw material, and LFTB from August 1 to September 30, 2009. Docket 8-1 at 6. As stated above, the more relevant time period for questioning is August 1 through September 16, 2009, which is the last date that Fairbank recalled the tainted product.

While BPI agrees that questioning about its *E. coli* and pH testing in general is relevant, BPI contends that questioning outside these two areas is overly broad. GOPAC responds that "BPI should also have to testify about any other microbacterial or food safety testing." Docket 16 at 17. Because the issue in *Precourt* is the source of the *E. coli* bacteria, questioning on all microbacterial or food safety testing is overly broad, especially for a nonparty. Thus, topics 1-3 are modified to only include testing of product, incoming raw material, and LFTB for *E. coli* and general pH levels from August 1 through September 16, 2009.

BPI does not object to topic 4, the "nature of all products sent to Fairbank Farms Ashville plant during the period of August 1, 2009 through September 30, 2009." Docket 8-1 at 6. Thus, GOPAC may depose BPI on topic 4 without modification.

Topics 5-7 concern Notices of Intended Enforcement, Food Safety Assessments, and "STEPS" notifications that BPI received from January 1, 2009, through the present from FSIS. Docket 8-1 at 6. BPI argues that the time period is too broad and that the information is irrelevant. GOPAC responds that it takes months for the government to complete its investigations and, thus, the time period is not too broad. As stated above, government inspection records are public documents and relevant to this case. Because the time

period is not overly burdensome, GOPAC may depose BPI on topics 5-7 without modification.

Topic 8 would question BPI about "[a]ny E.COLI event at the BPI plant, including E.COLI 0157.H7 during the period of August 1, 2009 through September 30, 2009 . . . ." Docket 8-1 at 6. While BPI questions the definition of "E.COLI event," it agrees to be deposed about "E.COLI event[s] that occurred between August 1 and September 16, 2009. This is a reasonable modification and topic 8 is modified to the time frame between August 1 and September 16, 2009.

In topics 9-10, GOPAC seeks to question BPI about how the company uses ammonia to process LFTB. BPI contends that it "employs a proprietary process whereby it injects ammonia into certain products to prevent *E. coli* contamination," and resists discussing this confidential business information other than "product ammonia and pH levels in general." Docket 24 at 17. GOPAC responds that the information is relevant because GOPAC suspects that BPI reduced the amount of ammonia in treating its product due to palpability concerns. *See* Michael Moss, *Safety of Beef Processing Method is Questioned*, N.Y. Times (Dec. 31, 2009), Docket 17-3 (discussing BPI's ammonia process).

When proprietary or trade secret information is sought, "the party opposing discovery must show that the information is a trade secret or other

confidential research, development, or commercial information . . . and that its disclosure would be harmful to the party's interest in the property." *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991) (quotation omitted). "The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id.* (citations omitted). "If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information." *Id.* (citing *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985)).

GOPAC does not dispute that the information it seeks concerns proprietary information but rather argues that the information is relevant to show that BPI reduced its ammonia levels which in turn could have led to *E. coli* bacteria in BPI's LFTB product. Even if the information is relevant, it could potentially reveal proprietary information. BPI is not a party in *Precourt* and risks public release of its potentially propriety information if GOPAC is allowed to depose BPI on these topics. While GOPAC offers to treat the documents as confidential documents, GOPAC and BPI are competitors and GOPAC could gain intimate knowledge of BPI's ammonia processes, some of which may be protected by patents. *See* Moss, *Safety of Beef Processing Method is Questioned*, Docket 17-3 (stating that BPI has "obtained patents for over two dozen pieces

of equipment and methods used in processing beef."). The subpoenas' subject matter is narrow because GOPAC is only trying to determine if BPI was the source of *E. coli* that allegedly caused Black's death. As stated above, if the results from the *E. coli* tests or government inspection records during the relevant time period, from August 1 to September 16, 2009, raise questions on BPI's ammonia processes and GOPAC has good cause to inquire into BPI's proprietary information, then GOPAC can move for oral argument on deposition topics 9 and 10.

Topic 11 seeks to depose BPI about "all suppliers to BPI including but not limited to stockyards and feed lots for the period of August 1, 2009 through September 30, 2009 . . . . " Docket 8-1 at 6. BPI argues that this information is irrelevant. Because GOPAC makes no counterargument to BPI's objections, GOPAC may not depose BPI on Topic 11.

In Topic 12, GOPAC desires to depose BPI on "HACCP plans for all BPI plants." Docket 8-1 at 6. The USDA requires meat and poultry plants under federal inspection to have HACCP plans, also known as Hazard Analysis and Critical Control Point plans, which are plans to reduce the contamination of meat and poultry with pathogenic bacteria. USDA, *Guidebook for the Preparation of HACCP Plans*, at 3 (Sept. 1999), *available at* http://www.fsis.usda.gov/OPPDE/nis/outreach/models/HACCP-1.pdf.

BPI agrees to generally testify about its HACCP plans as they existed in August of 2009. The relevant time period in this case, as established above, is from August 1 to September 16, 2009, and the appropriate subject matter is any *E. coli* bacteria in BPI's South Sioux City plant. Thus, GOPAC may depose BPI about its HACCP plans for containing *E. coli* in effect from August 1 to September 16, 2009, at the South Sioux City plant.

## II.   Attorney Fees

### A.  Motion for Reconsideration

In granting BPI's first motion to quash, the court awarded reasonable attorney fees and costs for BPI's attorney as a sanction under Rule 45(c)(1). Docket 10. GOPAC moves for reconsideration of this sanction award.

The federal rules do not provide for a motion for reconsideration. *Needham v. White Lab., Inc.*, 454 U.S. 927, 930 n.1 (1981) ("Such a motion is not recognized by any of the Federal Rules of Civil Procedure."); *Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir. 1988) (warning about "the dangers of filing a self-styled 'motion for reconsideration' that is not described by any particular rule of federal civil procedure."). A party moving for reconsideration "leave[s] the characterization of the motion to the court's somewhat unenlightened guess . . . ." *Sanders*, 862 F.2d at 168. Courts will scan the federal rules to recast the relief sought to conform to the rules. *Id.* Courts typically characterize motions to reconsider as motions made under either Rule

18

59(e) or 60(b). *Spinar v. S.D. Bd. of Regents*, 796 F.2d 1060, 1062 (8th Cir. 1986).

The differences between Rules 59(e) and 60)(b) are technical. *See Sanders*, 862 F.2d at 168-69 (discussing the differences between the two rules); *Baker v. John Morrell & Co.*, 266 F. Supp. 2d 909, 918-920 (N.D. Iowa 2003) (same). But when a party moves for reconsideration of an order that is also a judgment within 10 days of that judgment, the motion for reconsideration is properly made under Rule 59(e). *Campbell v. Bartlett*, 975 F.2d 1569, 1580 n.15 (10th Cir. 1992) (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)). A judgment includes " 'an order from which an appeal lies.' " *Auto Servs. Co, Inc. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) (quoting Fed. R. Civ. P. 54(a)).

On January 28, 2011, the court quashed the document and deposition subpoenas and awarded attorney fees to BPI as a sanction on GOPAC. The sole matter before this court is whether and to what extent BPI must respond to GOPAC's subpoenas and, thus, GOPAC could have appealed the January 28 order. Instead, GOPAC moved for reconsideration on February 5, 2011. Because GOPAC moved for reconsideration fewer than 10 days after the court issued its judgment, GOPAC's motion is properly made under Rule 59(e).

"Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.' " *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoting

19

*Innovative Home Health Care v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). " 'Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.' " *Id.* (quoting *Innovative Home Health Care*, 141 F.3d at 1286). The "district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e) . . . ." *Id.*

GOPAC argues that it "did not respon[d] to the First Motion to Compel because it erroneously assumed that the service of the new subpoenas mooted the issues. . . . Because of this mistake, GOPAC requests the Court reconsider its sanction award and instead decide the issue in conjunction with BPI's Second Motion to Quash." Docket 12 at 2. GOPAC further contends that "[b]ecause GOPAC was attempting in good faith to resolve the disputes relating to the first subpoena without the Court having to address the First Motion to Quash" that the court should "vacate its original attorney's fees order . . . ." Docket 13 at ¶ 4. For support, GOPAC relies on *Alberts v. HCA, Inc.*, 405 B.R. 498 (D.D.C. 2009) and *Tiberi v. CIGNA Insurance Co.*, 40 F.3d 110 (5th Cir. 1994).

In *Tiberi*, the district court refused to accept facsimile transmissions from an attorney stating that he had, in good faith, attempted to negotiate the parameters of the subpoenas and awarded sanctions in the form of attorney's fees. 40 F.3d at 110-11. The appellate court reversed because it found that the

20

district court committed an evidentiary error in not admitting the facsimile affidavits. *Id.* Here, GOPAC did not inform the court of its attempt to negotiate the subpoenas while BPI's first motion to quash was pending.

In *Alberts*, the court denied a motion for attorney's fees because the party serving the subpoenas, the defendants, "had consented to the plaintiff's request to have the bankruptcy court hear the plaintiff's . . . motion to quash. This consent lends credence to the defendants' contention that it was unnecessary to formally withdraw the subpoenas." 405 B.R. at 504 (internal quotation omitted). *Alberts* is factually distinguishable because the party serving the subpoenas responded to the motion to quash by agreeing to have the bankruptcy court hear the motion. GOPAC failed to respond here.

BPI is a nonparty and nonparties are entitled to Rule 45's full protection. GOPAC *never* responded to BPI's motion to quash. Before GOPAC served the first set of subpoenas in *Precourt* on BPI, GOPAC had twice served BPI with subpoenas in *Long.* BPI's counsel repeatedly informed GOPAC and its counsel that its subpoenas were procedurally defective but that BPI would voluntarily disclose certain documents. GOPAC refused to review BPI's voluntarily disclosed documents before serving BPI with more subpoenas. Instead, GOPAC served the first set of subpoenas in *Precourt* on December 14. BPI's counsel wrote a letter to GOPAC stating that BPI disclosed to Fairbank all relevant documents concerning *E. coli* for the relevant time period. GOPAC refused to review BPI's disclosure to Fairbanks before reissuing the subpoenas. On

December 28, BPI's attorney called GOPAC's counsel to discuss the subpoenas. GOPAC refused to withdraw the subpoenas and BPI filed the motion to quash.

As noted in *Alberts*, "[c]ourts have identified undue burden in certain circumstances in which a party's refusal to withdraw a subpoena compels the filing of a motion to quash." *Id.* at 502-03 (citing *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03-Civ-1382-RWS, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003); *Scott v. Burress*, No. 06-13916, 2008 WL 585072, at *6-7 (E.D. Mich. Mar. 3, 2008)). In this case, GOPAC's refusal to withdraw its procedurally defective subpoenas caused BPI to incur the expense of filing a motion to quash.

GOPAC did not respond to BPI's motion even though the local rules require parties to respond to all motions brought against them. *See, e.g.*, D.S.D. Civ. LR 7.1B ("On or before 21 calendar days after service of a motion . . . all opposing parties shall serve and file with the clerk of court a responsive brief . . . ."). Failing to respond to a motion to quash is not an exceptional circumstance and sanctions may be appropriate when a party fails to respond to a discovery motion. *See, e.g.*, *St. Paul Reins. Co. v. Hristov*, 155 Fed. App'x. 249, 250 (8th Cir. 2005) (upholding a district court's award of sanctions in discovery when the sanctioned party failed to respond to the discovery motion). If the court found exceptional circumstances because GOPAC consciously chose not to respond to BPI's motion, then a party could escape its duty to respond to motions, cause the diligent party needless expense in moving for

22

sanctions, occupy significant court resources, and then move for reconsideration under Rule 59(e). Such a scenario would essentially render the rules meaningless. At a minimum, GOPAC should have responded to BPI's motion stating that it believed BPI's motion was mooted when it served the new subpoenas on January 6, 2011. Because GOPAC has not met its burden to prove that exceptional circumstances exist, GOPAC's motion for reconsideration is denied.

### B.  Objection to the Amount of Attorney's Fees

As ordered by the court, BPI's attorney, Tim R. Shattuck, submitted an affidavit and summary of fees with a description of his services performed on the first motion to quash. Shattuck spent 49.7 hours on the motion and seeks $12,871.05, consisting of $12,142.50 in fees and $728.55 in tax.

In determining whether requested attorney fees are reasonable, courts utilize the lodestar method. *See, e.g.*, *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312-13 (8th Cir. 1981) (utilizing the lodestar calculation for determining reasonable attorney fees); *Walitalo v. Iacocca*, 968 F.2d 741, 747-48 (8th Cir. 1992) (remanding a case for the district court to use the lodestar method in calculating attorney fees). Under the lodestar method, "the district court multiplies a reasonable number of hours for the work performed by a reasonable hourly rate." *Farmers Co-op Co. v. Senske & Son Transfer Co.*, 572 F.3d 492, 500 (8th Cir. 2009) (citing *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 259-60 (8th Cir. 1991)). "Next, the court may adjust the amount based upon

23

the particular circumstances of the case." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

GOPAC does not dispute the hourly rates charged by Shattuck and a senior associate, Cheri Raymond. Docket 22 at 2 ("GOPAC is not objecting to the hourly rates in the Fee Affidavit."). Instead, GOPAC argues that the amount of time expended in drafting the motion to quash is unreasonable.

Shattuck and Raymond spent 49.7 hours in researching the motion to quash, drafting the motion to quash, drafting letters to GOPAC's counsel, and having phone conversations with GOPAC's attorneys in an attempt to negotiate the subpoenas without the court's intervention. There are complex issues in this case, including intricate relevancy determinations and whether the information sought by GOPAC is BPI's proprietary information. Notwithstanding the complexity of the issues, 49.7 hours is an unreasonable amount of time to prepare a motion to quash. A reduction in the number of hours, to 20 hours, yields a more reasonable number of hours worked on this particular motion.

Shattuck worked approximately 80 percent of the hours on the motion to quash, or 16 hours under the court's reduced hours calculation, while Raymond worked the remaining 20 percent, or 4 hours, on the motion. Shattuck's hourly rate is $275, for a total of $4,400. Raymond's hourly rate is $225, for a total of $900. With a 6 percent sales tax rate, GOPAC's counsel owes BPI's counsel $5,618. This award is consistent with other courts' awards

24

for attorney's fees incurred in drafting a motion to quash. *See, e.g.*, *Mapes v. Wellington Capital Group*, No. 8:07-CV-77, 2008 WL 2487795, at *1 (D. Neb. May 9, 2008) (decreasing the requested amount of fees by one-third for a total of $6,009 in attorney fees for drafting a motion to quash); *see also Night Hawk*, 2004 WL 1375558, at *3 (imposing attorney fees in the amount of $4,000 for drafting discovery motions).

**CONCLUSION**

BPI moves to quash GOPAC's document and deposition subpoenas dated January 6, 2011. BPI's motion is granted in part and denied in part. If, after completing the discovery as explained above, GOPAC believes that it has good cause to seek the preliminarily denied documents or depose BPI on the preliminarily denied topics, GOPAC may move for oral arguments on its subpoenas. GOPAC moves to reconsider the award of sanctions that the court granted for BPI's first motion to quash GOPAC's subpoenas. Because GOPAC has not shown exceptional circumstances, GOPAC's motion is denied. GOPAC also objected to BPI's attorney's fees. The court reduced the amount of fees that GOPAC owes BPI's counsel to $5,618. Accordingly, it is

ORDERED that nonparty Beef Product, Inc.'s second motion to quash (Docket 6) is granted in part and denied in part. Defendant Greater Omaha Packing Company, Inc.'s motion for reconsideration (Docket 12) is denied. Beef

Product, Inc. is awarded a judgment for attorney's fees in the amount of $5,618.

      Dated May 5, 2011.

                    BY THE COURT:

                    /s/ *Karen E. Schreier*
                    KAREN E. SCHREIER
                    CHIEF JUDGE